JUSTICE POWELL, concurring in part and dissenting in part.
This is a horrible case which might tempt reasonable jurists to do things that they might not ordinarily do. I agree with the majority that the trial court did not abuse its discretion in ordering lifetime probation. I also agree with the majority that a criminal sentencing is among the most difficult judgment calls that a trial court faces. I am aware of the high hurdle imposed by an abuse of discretion standard and wholly subscribe to the notion that, in most cases, it is the trial judge in the courtroom who is best suited to make many decisions, not the least of which is a sentencing decision. Finally, I agree with the majority that, when it comes to the appeal of a sentencing order, an appellate court should tread with great care. It is against this backdrop of understanding that I simply cannot agree with the majority's analysis of the no-contact condition. While I can understand why one might wish to impose a no-contact condition in this case, in my opinion when the record is properly evaluated, the imposition of the no-contact condition with regard to the stepmother was an abuse of *502 discretion.[1] Accordingly, I respectfully dissent.
Code § 19.2-303 provides that "[a]fter conviction ... the court may suspend imposition of sentence or suspend the sentence in whole or part and in addition may place the defendant on probation under such conditions as the court shall determine." This Court has recognized that Code § 19.2-303 provides trial courts with significant latitude in the terms and conditions that may be imposed, subject to a single limitation: the terms and conditions must be reasonable. Anderson v. Commonwealth , 256 Va. 580, 585, 507 S.E.2d 339, 341 (1998). However, the question of reasonableness cannot be determined in a vacuum. Indeed, conditions that are reasonable in one case may be wholly inappropriate for another. Accordingly, we have recognized that the imposed conditions "must be reasonable in light of the nature of the offense, the defendant's background, and the surrounding circumstances." Murry v. Commonwealth , 288 Va. 117, 122, 762 S.E.2d 573, 576 (2014). Additionally, because the principles of suspension and probation provide remedial tools to use in the rehabilitation of criminals and the protection of the community, logic dictates that the imposed conditions must also be " 'reasonably related to rehabilitation ... and to the deterrence of future criminal conduct.' " Id. (quoting Jones v. State , 41 P.3d 1247, 1258 (Wyo. 2002) ). See also United States v. Kebodeaux , 570 U.S. ----, ----, 133 S.Ct. 2496, 2504, 186 L.Ed.2d 540 (2013) (noting that the "principal purposes of postrelease conditions are to rehabilitate the convict, thus preventing him from recidivating, and to protect the public"); Griffin v. Wisconsin , 483 U.S. 868, 875, 107 S.Ct. 3164, 3169, 97 L.Ed.2d 709 (1987) ("[R]estrictions [imposed by a court] are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large."); Peyton v. Commonwealth , 268 Va. 503, 508, 604 S.E.2d 17, 19 (2004) ("Statutes that permit the trial court to impose alternatives to incarceration, such as probation or conditionally suspended sentences, are highly remedial and should be liberally construed to provide trial courts valuable tools for rehabilitation of criminals.").
"We review conditions of probation imposed by a trial court as part of its sentencing determination for abuse of discretion." Murry , 288 Va. at 122, 762 S.E.2d at 576.
A trial court abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; [or] when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."
Id. , 288 Va. 117, 122, 762 S.E.2d 573, 576 (2014) (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc. , 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011) ).
In the present case, the majority asserts that the trial court's decision was reasonable because "a trial court exercising its sound discretion could conclude that the stepmother was uniquely vulnerable to the possibility that Du would try to 'entice' her to 'recant' in support of his likely challenge to the 'validity' of his convictions." In coming to this conclusion, the majority never fully considers the most relevant factors: whether the no-contact condition is "reasonable in light of the nature of the offense, the defendant's background, and the surrounding circumstances" or whether the no-contact condition is " 'reasonably related to rehabilitation ... and to the deterrence of future criminal conduct.' " Murry , 288 Va. at 122, 762 S.E.2d at 576 (quoting Jones , 41 P.3d at 1258 ).
When viewed in light of the Murry factors, it appears to me that the no-contact condition was unreasonable and, therefore, the trial court abused its discretion. The record demonstrates that Du only has a significant bond with three people in this country: his father, his stepmother and his half-sister. Of those three, only his stepmother expressed her desire to allow contact with Du. To effectively isolate Du from the only person in this country *503 who has a significant bond with him and who has affirmatively indicated that she wishes to remain in contact with him[2] is, in my judgment, unreasonable.[3]
Furthermore, it cannot be said that the no-contact condition serves any rehabilitative purpose. Such a ban does not, in any way, promote good behavior or deter Du from future crimes. Nor can it be said that it protects the public or his stepmother. Indeed, Du will remain incarcerated for a minimum of 50 years regardless of whether he has contact with his stepmother, thereby ensuring the safety of the public and his stepmother.
Instead of considering the Murry factors, the majority simply examines whether the trial court's rationale for imposing the no-contact condition was logical and, finding that it was, concludes that the condition was reasonable. However, in so doing, the majority overlooks the peculiar circumstances of this case, namely that the trial court based its rationale on a possibility that cannot come to pass under our jurisprudence. According to the trial court, the reason that it imposed the no-contact condition is because
in earlier stages of the proceeding, [Du] communicated with the victims and attempted to entice them to fail to appear and to fail to cooperate with the prosecution, even going so far as to tell them to "take the 5th." Such attempts are indicative to the Court that [Du] may attempt, at some point, to entice the victims to recant their stories or somehow affect the validity of [Du'] convictions.
I recognize that, in light of Du's earlier attempts to convince the victims to not testify or cooperate with the prosecution, the trial court's concern that Du would engage in further attempts to manipulate his stepmother was certainly justified. At the same time, however, the facts of this case demonstrate that any concern the trial court may have about such manipulation affecting the validity of Du's conviction in any way is clearly misplaced. We have recognized that "recantation evidence is generally questionable in character and is widely viewed by courts with suspicion because of the obvious opportunities and temptations for fraud. Unless proven true, recantation evidence merely amounts to an attack on a witness' credibility by the witness herself." Carpitcher v. Commonwealth , 273 Va. 335, 346, 641 S.E.2d 486, 492 (2007) (citations omitted). Given the fact that Du confessed to committing the crimes that he ultimately pled guilty to, and that his confession is corroborated by evidence that does not rely on any victim testimony (e.g., the video evidence of Du attacking his father and stepmother and the DNA evidence indicating sexual contact with his half-sister), it is highly unlikely that he could prove the truth of any recantation evidence. Thus, even if the trial court's concern was realized and Du was able to manipulate all three victims into recanting their stories, it would have no effect on the validity of his conviction. In other words, it appears to me that the trial court based its decision on a factor that was entirely irrelevant. This is one way in which we have acknowledged that a trial court commits an abuse of the considerable discretion afforded it. Murry , 288 Va. at 117, 762 S.E.2d at 576 ; Landrum , 282 Va. at 352, 717 S.E.2d at 137.
*504 Having determined that the trial court failed to consider the relevant factors (i.e., the Murry factors) and gave significant weight to improper or irrelevant factors (i.e., speculation that Du might try to manipulate his stepmother into recanting), I would find that the trial court abused its discretion in imposing the no-contact condition with regard to Du's stepmother. I, therefore, would reverse the judgment of the Court of Appeals upholding the trial court's sentencing order and remand the matter for resentencing.

I agree with the majority that, having limited his challenge to the no-contact condition as it applied to his stepmother, Du has waived any challenge to the no-contact condition as it applies to his father and half-sister. See Rule 5:25.

Although the majority characterizes the Commonwealth's proffer of the stepmother's request to allow Du to contact her as weak, it is only relevant that the request was unequivocally made. Similarly, whether the request can be reconciled with the victim impact statement is not particularly relevant to whether the no-contact condition was reasonable.

To be clear, I am not saying that the no-contact condition is patently unreasonable simply because the stepmother requested that Du be allowed to have contact with her. Rather, my analysis is limited to the facts of this case. Here, it is the combination of the stepmother's request and her awareness of the fact that Du shares a significant relationship with a particularly small group of individuals due to his background that makes this condition unreasonable.
I am also persuaded by the fact that this condition will similarly isolate the stepmother. As her victim impact statement points out, she speaks limited English and she has few friends or relatives in this country. While in no way discounting the horror of the encounter, in my opinion the trial court should have given her wishes the appropriate consideration. Although I cannot say that the trial court gave her wishes no consideration, it is apparent that the stepmother's request was given less consideration than other, less relevant factors.